Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/05/2020 08:09 AM CDT

In re Interest of Taeson D., a child
under 18 years of age.
State of Nebraska, appellee, v.
Samuel T., appellant.

___ N.W.2d ___

Filed March 13, 2020.    No. S-19-382.

1. **Parental Rights: Due Process.** Whether a parent who is incarcerated or otherwise confined in custody has been afforded procedural due process for a hearing to terminate parental rights is within the discretion of the trial court, whose decision on appeal will be upheld in the absence of an abuse of discretion.
2. **Juvenile Courts: Appeal and Error.** Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings.
3. **Parental Rights: Due Process.** An incarcerated parent's physical presence is not necessary at a hearing to terminate parental rights, provided that the parent has been afforded procedural due process.
4. ____: ____. The initiative is properly placed on the parent or the parent's attorney to notify the court of the parent's incarceration and to request to appear telephonically at the hearing to terminate parental rights.
5. **Juvenile Courts: Parental Rights: Due Process.** The juvenile court has discretion to determine how an incarcerated parent may meaningfully participate in the hearing on the termination of his or her parental rights consistent with due process.

Appeal from the Separate Juvenile Court of Lancaster County: Reggie L. Ryder, Judge. Affirmed.

Troy J. Bird, of Hoppe Law Firm, L.L.C., for appellant.

Pat Condon, Lancaster County Attorney, Mary Norrie, and Danielle M. Kerr for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Samuel T. appeals the termination of his parental rights to his minor child, Taeson D. During the pendency of these proceedings, Samuel became incarcerated in South Carolina, serving a 30-year sentence. Following a termination hearing at which Samuel was represented by counsel but not present, the separate juvenile court of Lancaster County determined that (1) Samuel substantially neglected to give Taeson necessary parental care; (2) Taeson was a juvenile as described by Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) and reasonable efforts have failed to correct conditions; (3) Taeson was in an out-of-home placement for 15 or more months of the most recent 22 months; (4) it was in the best interests of Taeson to terminate Samuel's parental rights; and (5) Samuel was unfit to parent Taeson. The juvenile court terminated Samuel's parental rights to Taeson on three statutory bases as more fully described below. Samuel appeals. He claims that his procedural due process rights were violated and that the juvenile court erred when it terminated his parental rights to Taeson. We affirm.

## FACTS

Taeson was born in July 2017. The Nebraska Department of Health and Human Services (DHHS) took custody of Taeson at the hospital shortly after his birth because his biological mother had admitted to methamphetamine use during pregnancy and the meconium fluid had tested positive for methamphetamine. Taeson's biological mother relinquished her parental rights in late 2018. Taeson was placed with Lachrisha T., Samuel's adult daughter, who has cared for Taeson since birth.

Samuel was present at the hospital for Taeson's birth. Samuel and the child apparently had almost no further contact after this point. Samuel became incarcerated in November 2017 on what the record suggests was a drug-related offense.

In December 2017, a paternity test showed that Samuel was the biological father of Taeson. Candace Sturgeon, a caseworker with DHHS, unsuccessfully attempted to contact Samuel through Lachrisha and other means. Sturgeon eventually located Samuel through a DHHS computer system search and visited him at the jail in Saline County, Nebraska, in June 2018. She testified at the termination hearing that she informed Samuel that the result of the paternity test he had taken showed he was Taeson's biological father. According to Sturgeon, Samuel stated that he had assumed he probably was Taeson's father, that he was aware Taeson was living with Lachrisha, and that he had personally recommended that Taeson be placed with her after the child was removed from his biological mother's care.

According to Sturgeon, Samuel had indicated he supported Lachrisha's potentially adopting Taeson. According to Sturgeon, Samuel stated "something to the effect of well I obviously am not an option since I'm going to be in prison for 30 years, so I understand that." Sturgeon testified that she advised Samuel that he needed to keep her updated on his whereabouts, because it would be very difficult for her to know where he was if he was transferred.

Samuel asked Lachrisha to bring the child to county jail one time, but before arrangements could be made, Samuel was transferred to federal prison in South Carolina on a 30-year sentence. After the transfer, Samuel did not communicate with Sturgeon or DHHS to update them on his whereabouts or to contact Taeson. Sturgeon testified that she made largely unsuccessful efforts to contact Samuel multiple ways at least once a month.

Turner attended a paternity hearing on June 6, 2018, at which he was declared Taeson's legal father. In October 2018,

the State moved to terminate Samuel's and the biological mother's parental rights. The motion to terminate alleged three grounds under Neb. Rev. Stat. § 43-292 (Reissue 2016), which states:

> The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
>
> (2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;
>
> . . . .
>
> (6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court, have failed to correct the conditions leading to the determination;
>
> (7) The juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months.

On November 19, 2018, Samuel was served in prison in South Carolina with a copy of the motion to terminate his parental rights and a summons to appear before the court for a hearing on the matter. In December, Samuel denied the allegations in the motion to terminate and the termination hearing was continued.

In December 2018, Sturgeon left a message with a caseworker at the South Carolina prison and Samuel called her back. During that telephone call, Sturgeon explained to Samuel that the State was moving to terminate his parental rights. Samuel stated that he did not want his parental rights

terminated and that he no longer approved of Taeson's being placed with Lachrisha. He explained that Lachrisha was not "put[ting] any money on his books" and had stopped communicating with him. Samuel stated that he hoped he would be successful in the appeal of his criminal conviction and that his intent was to win his appeal and parent Taeson.

Sturgeon testified that Samuel did not make further contact with DHHS after December 2018. At the time of the termination hearing in March 2019, Samuel had been in prison in South Carolina for 8 months. Taken as a whole, the testimony showed that Samuel had not attempted to be involved in Taeson's life either before or after his incarceration. Samuel had not requested photographs of Taeson and had not contacted him after his birth. Sturgeon explained that the service DHHS typically offers to parents who are incarcerated is visitation with the child; however, it is very difficult to offer services if someone is placed out of state and it is impossible to offer services to someone that DHHS is unable to contact. She testified that, in her view, Samuel's parental rights should be terminated even if he wins his appeal on his criminal case because it is unclear how long it would take him to work through a case with DHHS and ensure he could care for a child.

The termination hearing was held on March 13, 2019. The child was represented by a guardian ad litem, and counsel appeared for the State.

Samuel was represented throughout the termination hearing by an attorney. Samuel did not appear physically or telephonically. The juvenile court recognized that Samuel denied the allegations in the motion to terminate. Samuel's counsel was asked to address Samuel's nonappearance, and Samuel's counsel stated as follows:

> Well, Your Honor, he's incarcerated in North [sic] Carolina penitentiary system. I've had communication with him be [sic] email on and off throughout the last six weeks or so. I know that he does object to what — having his rights terminated. I've also tried to communicate with

him regarding relinquishment, which he's been unable to or unwilling to sign a relinquishment, and so you know, I can't imagine the Court is going to continue this out for 30 years 'til he can put himself in a place where he can parent, so I see no other alternative but moving forward today.

Following the hearing, the juvenile court filed an order which found that the allegations of the motion for termination of parental rights were true by clear and convincing evidence. The court enumerated its findings that (1) regarding § 43-292(2), Samuel substantially neglected to give Taeson necessary parental care; (2) regarding § 43-292(6), Taeson was a juvenile as described by § 43-247(3)(a) and reasonable efforts have failed to correct conditions; (3) regarding § 43-292(7), Taeson was in an out-of-home placement for 15 or more months of the most recent 22 months; (4) it was in the best interests of Taeson to terminate Samuel's parental rights; and (5) Samuel was unfit to parent Taeson now and in the future. The juvenile court terminated Samuel's parental rights to Taeson.

Samuel appeals.

## ASSIGNMENTS OF ERROR

On appeal, Samuel claims, summarized and restated, that (1) he was denied procedural due process rights at the termination hearing and (2) the juvenile court erred when it terminated his parental rights because DHHS had failed to make reasonable efforts to reunite him and Taeson.

## STANDARDS OF REVIEW

[1] Whether a parent who is incarcerated or otherwise confined in custody has been afforded procedural due process for a hearing to terminate parental rights is within the discretion of the trial court, whose decision on appeal will be upheld in the absence of an abuse of discretion. See *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004).

[2] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. See *In re Interest of Zoie H.*, 304 Neb. 868, 937 N.W.2d 801 (2020).

## ANALYSIS

*Due Process.*

Samuel, who was incarcerated in South Carolina, had his parental rights to Taeson terminated at a hearing at which he was represented by counsel; he was not physically present nor did he participate telephonically. In Samuel's brief, he contends that he was denied due process generally because he did not appear "in some fashion," brief for appellant at 12, and, in particular, he was denied a "telephonic or video hearing," brief for appellant at 9. We determine that under the facts of this case, Samuel was not denied due process.

[3] It is settled in Nebraska, and Samuel agrees, that an incarcerated parent's physical presence is not necessary at a hearing to terminate parental rights, provided that the parent has been afforded procedural due process. See, *In re Interest of Mainor T. & Estela T., supra*; *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). The fundamental requirement of due process is the opportunity to be heard "'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). We have explained that a juvenile court must consider several factors in determining whether to allow a parent's attendance, which factors are as follows:

the delay resulting from prospective parental attendance, the need for disposition of the proceeding within the immediate future, the elapsed time during which the proceeding has been pending before the juvenile court, the expense to the State if the State will be required to provide transportation for the parent, the inconvenience or detriment to parties or witnesses, the potential danger or security risk which may occur as a result of the parent's

release from custody or confinement to attend the hearing, the reasonable availability of the parent's testimony through a means other than parental attendance at the hearing, and the best interests of the parent's child or children in reference to the parent's prospective physical attendance at the termination hearing.

*In re Interest of L.V.*, 240 Neb. at 416, 482 N.W.2d at 258-59.

[4] With respect to the participation of the incarcerated parent, we have stated that in most situations, in order to trigger the requirements of *In re Interest of L.V.*, the initiative is properly placed on the parent or the parent's attorney to notify the court of the parent's incarceration and to request attendance. See *In re Interest of Mainor T. & Estela T., supra*. We logically apply this principle to an incarcerated parent's request to appear telephonically. In the present case, no such request was made and, to the contrary as seen in the material quoted above, such appearance was waived.

[5] We are aware of jurisdictions which require juvenile courts to either give incarcerated parents the opportunity to participate by telephone in the entire hearing, e.g., *In Interest of M.D.*, 921 N.W.2d 229 (Iowa 2018) (amended Mar. 5, 2019), or offer an alternative procedure by which the incarcerated parent may review a transcript of the record of the evidence presented against him or her and testify later at a bifurcated hearing. See, *E.J.S. v. Dept. of Health & Soc. Serv.*, 754 P.2d 749 (Alaska 1988); *In re Randy Scott B.*, 511 A.2d 450 (Me. 1986). However, in light of a juvenile court's relative inability to compel an out-of-state correctional facility to allow an incarcerated parent to participate in an entire hearing, we decline to require juvenile courts to follow a rigid procedure of telephonic participation for the entire hearing in all cases. Like several other jurisdictions that have thoroughly considered the issue, we leave it to the juvenile courts' discretion to determine how an incarcerated parent may meaningfully participate in the hearing on the termination of his or her parental rights consistent with due process. See, *In re C.G.*, 954 N.E.2d 910 (Ind.

2011) (cases collected); *In re D.C.S.H.C.*, 733 N.W.2d 902 (N.D. 2007); *State ex rel. Jeanette H. v. Pancake*, 207 W. Va. 154, 529 S.E.2d 865 (2000).

In this case, Samuel was aware that Taeson was adjudicated as a juvenile under § 43-247(3)(a). Samuel received notice of the termination hearing, filed a pleading denying the allegations, and was represented by counsel throughout the termination proceeding. Compare *In re Interest of Davonest D. et al.*, 19 Neb. App. 543, 809 N.W.2d 819 (2012) (concluding due process violated for inmate who was neither present nor represented by counsel at termination hearing). The record shows that Samuel had been communicating with counsel and that Samuel's counsel cross-examined the witness and had the opportunity to present evidence, which he declined. Samuel did not request to be present or telephonically participate at the termination hearing and did not request a continuance. The hearing on parental termination had already been continued twice, and the juvenile court properly exercised its discretion when it conducted the hearing with Samuel's interests represented by counsel. Samuel was not denied procedural due process under the circumstances.

*Termination.*

Samuel contends that the juvenile court erred when it terminated his parental rights under § 43-292(6) because the State did not make reasonable efforts to reunite him with Taeson. See Neb. Rev. Stat. § 43-283.01 (Cum. Supp. 2018) and § 43-292(6). We reject this assignment of error.

The juvenile court found sufficient evidence existed under § 43-292(2), (6), and (7) to support a termination of Samuel's parental rights. We have held that any one of the bases for termination of parental rights codified by § 43-292 can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

Samuel has not raised a challenge to the sufficiency of the evidence establishing that under § 43-292(2), he substantially and continuously or repeatedly neglected and refused to give Taeson necessary parental care and protection, or that under § 43-292(7), Taeson had been in an out-of-home placement for 15 or more months of the most recent 22 months. Each of these subsections is a statutory basis for termination. See *In re Interest of Sir Messiah T. et al., supra*. We find support in the record establishing grounds for termination under § 43-292(2) and (7). In addition, the evidence demonstrates that termination of Samuel's parental rights is in the best interests of Taeson. At the time of the proceedings, Samuel had virtually no relationship with Taeson and there was no evidence that Samuel had taken steps to establish a relationship. Samuel was sentenced on a drug-related offense to be incarcerated for the entirety of Taeson's juvenile years. Further, the juvenile court's finding that Samuel was unfit was supported by the record.

Because the State needed to prove only one basis for termination, and did so here, we need not further analyze Samuel's claim that the State made insufficient efforts to preserve and reunify the family under § 42-292(6). See *In re Interest of Sir Messiah T. et al., supra*.

## CONCLUSION

The juvenile court did not deny Samuel procedural due process, and it did not err when it determined that terminating Samuel's parental rights to Taeson was appropriate under § 43-292(2) and (7) and was in the best interests of Taeson. Accordingly, we affirm.

AFFIRMED.