Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/25/2020 08:08 AM CDT

In re Interest of Noah C., a child
under 18 years of age.
State of Nebraska, appellee, v.
Samantha H., appellant.

___ N.W.2d ___

Filed July 2, 2020.    No. S-19-843.

1. **Motions for Continuance: Appeal and Error.** A court's grant or
   denial of a continuance is within the discretion of the trial court, whose
   ruling will not be disturbed on appeal in the absence of an abuse of
   discretion.
2. **Juvenile Courts: Evidence: Appeal and Error.** Juvenile cases are
   reviewed de novo on the record, and an appellate court is required
   to reach a conclusion independent of the juvenile court's findings.
   However, when the evidence is in conflict, an appellate court may con-
   sider and give weight to the fact that the trial court observed the wit-
   nesses and accepted one version of the facts over the other.
3. **Parental Rights: Proof.** Any one of the bases for termination of paren-
   tal rights codified by Neb. Rev. Stat. § 43-292 (Reissue 2016) can serve
   as the basis for the termination of parental rights when coupled with
   evidence that termination is in the best interests of the child.
4. **Constitutional Law: Parental Rights: Proof.** A parent's right to raise
   his or her child is constitutionally protected; so before a court may ter-
   minate parental rights, the State must also show that the parent is unfit.
5. **Parental Rights: Presumptions: Proof.** There is a rebuttable presump-
   tion that the best interests of a child are served by having a relationship
   with his or her parent. Based on the idea that fit parents act in the best
   interests of their children, this presumption is overcome only when the
   State has proved that the parent is unfit.

Appeal from the County Court for Cheyenne County: Kris
D. Mickey, Judge. Affirmed.

Steven E. Elmshaeuser for appellant.

Jonathon T. Stellar, Cheyenne County Attorney, for appellee.

Audrey M. Elliott, guardian ad litem.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## I. NATURE OF CASE

Following a hearing, the county court for Cheyenne County, sitting as a juvenile court, found sufficient evidence to terminate the parental rights of Samantha H. to her biological minor child, Noah C. Samantha appeals, claiming that the juvenile court erred when it (1) denied her motion to continue the termination hearing and (2) found that termination was in the best interests of Noah. We affirm.

## II. FACTS

Samantha is the biological mother of Noah, who was born in 2013. Noah's father, Donald M., is not part of this appeal. Noah was removed from Samantha's care because of safety concerns, and he has been in out-of-home care since December 5, 2017.

The juvenile court adjudicated Noah as a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). The adjudication decision was affirmed by the Nebraska Court of Appeals in a memorandum opinion. See *In re Interest of Noah C.*, No. A-18-059, 2018 WL 4761053 (Neb. App. Oct. 2, 2018) (selected for posting to court website).

On March 28, 2019, the State moved to terminate Samantha's parental rights. The complaint to terminate alleged four grounds under Neb. Rev. Stat. § 43-292 (Reissue 2016), which states:

> The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action

to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:

. . . .

(2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;

(3) The parents, being financially able, have willfully neglected to provide the juvenile with the necessary subsistence, education, or other care necessary for his or her health, morals, or welfare or have neglected to pay for such subsistence, education, or other care when legal custody of the juvenile is lodged with others and such payment ordered by the court;

. . . .

(6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court, have failed to correct the conditions leading to the determination;

(7) The juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months.

Trial on the complaint for termination was scheduled for June 4, 2019.

Prior to trial, the juvenile court took up the motion to quash filed by Joe Kozicki, who had been subpoenaed by Samantha. The juvenile court quashed the subpoena, because it found the witness was located over 100 miles away and objected to the subpoena. See Neb. Rev. Stat. § 25-1227 (Reissue 2016).

Samantha, who was representing herself with standby counsel present, moved to continue the termination hearing to prepare her defense (1) because she had not received her complete case file from her previous counsel until May 31, 2019, and

(2) because Kozicki, who she claimed was a material witness to her case, was unavailable. Samantha had apparently terminated representation by her prior counsel in December 2018 and claimed that she had not had time to review all of the exhibits and documents in her case file, because she had the complete file for less than a week.

In support of the motion to continue, Samantha stated that Kozicki was a material and necessary witness for presentation of her case and that she wanted time to take a trial deposition.

The juvenile court overruled the motion to continue and explained its reasoning to Samantha as follows:

What I'm told is and what I believe is that you recently received some documentation from [prior counsel's] office. What I know from the court file is that [prior counsel] was permitted to withdraw in December of 2018, and you have previously represented in court in other proceedings that you fired him. And so, for approximately six months, [prior counsel], and perhaps a little more, has not been a part of these proceedings. I also know from the documents in evidence and from the argument and testimony that the motion to terminate parental rights has been of record since March 28th. A first appearance was held, I believe in April of 2019, and the matter scheduled then. So, all parties have known for quite some time that this was going to take place here today.

. . . So — and I also believe, as an aside, that there is some reasonable duty placed upon all litigants when you are made aware of the filing of motions of character like this, that is, a motion to terminate parental rights, that you have a duty to timely request whatever documentation it is that you wish to have as part of the evidence in such a case. And under examination from this Court, [Samantha] was unable to identify specifically when such a request was made, whether it was timely or not, when the documents were first received that were part of most of her file, or for that matter, anything that was recently received

that should affect the outcome. You have the documents. You've had them, it sounds like, for most of a week. Those documents, to the extent they pertain to the motion to terminate parental rights are within your possession, and can be made a part of your case if that's what you decide to do. That's up to you and your lawyer.

I simply find that today there isn't any meritorious basis supporting . . . the motion to continue . . . .

At trial, the State called a neuropsychologist, who testified regarding her March 2017 and September 2018 evaluations of Noah. In her 2018 report, she noted that "Noah currently shows measurable improvement in his presentation, test scores, and observer ratings from the foster home and the school compared to observations in 2016 and 2017. These improvements are shown to occur in the foster home placement and in the context of the visits with [Samantha] currently stopped." She recommended that all visits between Samantha and Noah should cease until Samantha undergoes a psychological evaluation. She diagnosed Noah with "an unspecified Trauma and Stressor related disorder stemming from parent extreme reactivity and dysregulated behaviors that have been observed in multiple clinical and non-clinical settings." Her report opined that if Samantha could not demonstrate capacity to improve, "any form of interaction with [Samantha] is likely to continue to place Noah's safety and well-being in jeopardy." She further testified at trial that her recommendations in the report from her evaluations were also in Noah's best interests.

The State next called a psychologist, who testified that Samantha was referred to him for a psychological and parenting evaluation. The psychologist was unable to complete the evaluation, because Samantha refused to sign a consent form to a parenting evaluation over several appointments.

Lt. Keith Andrew of the Sidney Police Department testified for the State and the guardian ad litem regarding an intake of Noah on December 5, 2017. Lieutenant Andrew

contacted Samantha, at her residence, who agreed to participate in a respite plan where Noah would stay somewhere else for a few days to give Samantha "a break." Lieutenant Andrew observed that Samantha was very agitated and frustrated and that she was making comments indicating she might harm Noah. Lieutenant Andrew concluded respite was not going to work and removed Noah from Samantha's physical custody. Lieutenant Andrew also testified that he responded to two separate incidents involving Samantha after Noah's removal. In one incident, Samantha threw things at a family support worker and, at another, assaulted an officer.

Dawn Hatcher, a family services provider at a family support organization, testified regarding her work with Samantha and Noah. She testified that Samantha made about 85 percent of the visits over a 4- to 5-month period. The missed visits were canceled because Samantha was later than 15 minutes. She testified that about five to eight visits were cut short because Hatcher felt Samantha's behavior was "too erratic to parent." For example, Samantha arrived for one visit "agitated and irritated" and, as the visit progressed, "her behavior became more angry and was visibly angry." Eventually, Samantha became so angry and argumentative that Hatcher concluded the visit and asked Samantha to leave.

Hatcher also testified regarding the last supervised visit in July 2018, at which she called law enforcement because Samantha was upset and agitated about Noah's vaccinations. Samantha had apparently not been advised prior to Noah's being given vaccines. Samantha became increasingly upset. Hatcher testified that Samantha was screaming and yelling, slamming chairs, and calling Hatcher names, including "bitch" and "cunt." She also testified that Samantha threw a pillow at her during this visit. Noah was present in the room when this occurred and told Hatcher he was scared. The visits ceased after this incident. Hatcher also testified that Samantha refused to participate in out-of-home family support, because Samantha felt it was not helping her.

The chief operating officer for the same family support organization also testified for the State. She testified that she observed one or two full visits, which went well until Samantha would get upset if she were told she could not do something or was asked to sign a release. She testified that Samantha could not deal with Noah when he became dysregulated. She testified that Samantha had completed several courses but did not complete the final requirement of meeting and reviewing the program.

The State also called the Department of Health and Human Services (DHHS) worker who received the intake on December 5, 2017, to testify. She had been present with Lieutenant Andrew during the visit to Samantha's home. Although the DHHS worker initially had respite set up, Samantha's behavior from the time they left to when they arrived again later that day was concerning. Samantha eventually declined respite and did not want to work with DHHS. The DHHS worker testified that team meetings did not go well, because Samantha argued with everyone, refused to work with some family support providers and certain workers, and ultimately refused to work with any family support providers because she refused to sign their contracts. The last time Noah saw Samantha was at a therapeutic visit in November 2018. The DHHS worker also testified that Noah had been in out-of-home care continuously since December 5, 2017, 18 months at the time of trial.

Sarah Robinson, a child and family services specialist for Noah, testified next. Once Noah was removed, Robinson offered Samantha 18 hours of supervised visitation per week, and Samantha attended about 85 percent of those visits. On August 1, 2018, Samantha's visits were suspended until October 10, when the juvenile court ordered therapeutic visits. The therapist then recommended supervised visits. However, those visits never occurred, because Samantha refused to sign the intake paperwork to work with family support providers.

Robinson testified that Samantha did not complete most of her goals in the case plan and court report. With respect to these goals, Robinson testified that Samantha (1) did not provide a safe and stable environment for Noah by learning and demonstrating new parenting skills and understanding child development; (2) did not provide a safe and stable environment for Noah by learning new coping skills and addressing any mental health symptoms she was experiencing; (3) did not provide a safe and stable environment for Noah by finding and using informal supports; (4) did not provide a safe and stable home for Noah by maintaining basic resources; and (5) did not maintain basic needs for her and Noah, such as food, clothing, utilities, and a home within the previous 6 months. Robinson explained how Samantha had failed to learn and implement various strategies listed for achieving the family support goals. Robinson then testified that Noah was not able to return safely to Samantha's care, because Samantha had not been able to demonstrate that she can safely and effectively parent Noah, had completed very little of the case plan, had not completed any goals, and would not allow Robinson into her home in the last 6 months.

Samantha offered evidence, including a letter from her counselor, recommending that Samantha and Noah move forward with supervised visitation. Samantha's counselor had seen Samantha for five visits in late 2018 and noted that Samantha "has done a good job here of being appropriate."

Samantha also called as a witness a family advocate, who testified that she has a background in criminal justice and probation. She testified that she is familiar with how DHHS handles cases, and she observed that Samantha's case was handled in an unusual way. The advocate testified that she did not feel Samantha's "voice [had] been heard" throughout the case and that workers had "come in to tell [Samantha] what [she is] going to do" instead of finding a way to work with Samantha. The advocate testified that she did not feel Samantha would hurt a child or neglect a child in her care.

The juvenile court denied Samantha's request to keep the record open or allow the taking of trial depositions. After receiving written closing arguments, the juvenile court took the case under advisement. In a written order, the juvenile court found that sufficient evidence was presented to demonstrate clearly and convincingly that termination of parental rights was appropriate and in the best interests of Noah. Samantha appeals.

## III. ASSIGNMENTS OF ERROR

Samantha claims, summarized and restated, that the juvenile court erred when it (1) denied her motion to continue the termination hearing and (2) found a statutory basis to terminate her parental rights to Noah after it found that termination was in the child's best interests.

## IV. STANDARDS OF REVIEW

[1] A court's grant or denial of a continuance is within the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. See *In re Interest of C.G.C.S.*, 225 Neb. 605, 407 N.W.2d 196 (1987).

[2] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Taeson D.*, 305 Neb. 279, 939 N.W.2d 832 (2020). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015).

## V. ANALYSIS

### 1. Continuance

Samantha claims that the juvenile court erred when it denied her request for a continuance of the termination hearing. She contends that she was not prepared for the termination hearing and that the testimony of an unavailable witness was necessary

and material to the presentation of her case. We reject this assignment of error.

With respect to Samantha's argument that she was unable to prepare for the hearing, the record shows that Samantha had over 2 months to prepare her case between the date on which she received notice of the complaint to terminate her parental rights and the date of the termination hearing. In its written order, the juvenile court found that all parties were given adequate and reasonable notice concerning the scheduled hearing. The juvenile court specifically found that Samantha

fail[ed] to adequately prepare, to timely accept the assistance of counsel, to properly elicit the testimony of a witness outside the boundaries of the subpoena power of the court, or in some other manner fail[ed] to appreciate the significance of the juvenile court process [and these failures do] not justify delaying justice or making special accommodations to one party over the other.

Although Samantha claims she did not have access to her complete case file because she terminated representation by her lawyer, our close review of the record and testimony at the hearing on the continuance shows that the trial court reasonably found she had access to and personal knowledge of the relevant evidence. Samantha was unable to identify when she requested the full case file, and in any event, she possessed the complete case file in the days prior to the termination hearing.

With respect to Samantha's argument that a continuance was necessary for her to depose Kozicki, Samantha did not make a showing of Kozicki's identity and his relevance to her case. The juvenile court did not err when it concluded, based on the information before it, that testimony of Kozicki was not necessary and material.

The record supports the findings of the juvenile court, and we determine that it did not abuse its discretion when it denied Samantha's motion for a continuance.

## 2. TERMINATION

Samantha contends generally that her parental rights should not have been terminated. She specifically claims that the juvenile court erred when it found that termination was in Noah's best interests. Because Samantha concedes that the record establishes grounds for termination under § 43-292(7) and we find support in the record establishing that termination of Samantha's parental rights is in the best interests of Noah, we reject this assignment of error.

### (a) Statutory Grounds for Termination

[3] The juvenile court found that sufficient evidence existed under § 43-292(2), (3), (6), and (7), set forth above, to support a termination of Samantha's parental rights. We have held that any one of the bases for termination of parental rights codified by § 43-292 can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Taeson D.*, 305 Neb. 279, 939 N.W.2d 832 (2020).

Samantha does not dispute the fact that the evidence establishes that Noah had been in an out-of-home placement for 15 or more months of the most recent 22 months. See § 43-292(7). Such evidence established a statutory basis for termination. See *id*. Having determined the statutory ground enumerated in § 43-292(7) has been proved, we do not consider issues relating to the sufficiency of the evidence concerning the other statutory provisions identified by the juvenile court as grounds for termination. See *In re Interest of Taeson D., supra*.

### (b) Best Interests of Noah

[4,5] In addition to proving a statutory ground, the State must show that termination is in the best interests of the child. § 43-292. A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015).

There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. *Id*. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id*. Although the term "unfitness" is not expressly used in § 43-292, the concept is generally encompassed by the fault and neglect subsections of that statute and is also embedded in a determination of the child's best interests, which is under consideration in this appeal. See *In re Interest of Jahon S., supra*. We have defined parental unfitness as "a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being." *Id*. at 104, 864 N.W.2d at 234. Analysis of the minor child's best interests and the parental fitness analysis are fact-intensive inquiries. See *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012). And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id*.

At the onset of the State's involvement in this case, the relationship between Samantha and Noah was unhealthy. Samantha had called DHHS' hotline for help and sought help for Noah's behaviors. The dysfunctional dynamic was observed by DHHS and law enforcement witnesses, as well as a neuropsychologist, who testified that in 2017, she noted a strained relationship between Samantha and Noah.

After removal, Noah was progressing in school, engaging in socially acceptable programs, and doing well. Testimony from caseworkers shows that although Samantha had many appropriate interactions with Noah during supervised visitation, Samantha could not control her behaviors if she became upset or if Noah became dysregulated. Because of this inability to control her own behavior, Samantha's visitations never progressed to the point at which the personnel involved trusted her to be alone with Noah. Witnesses verified Samantha's

pattern of volatile, angry, and disruptive behavior during visits with Noah or family team meetings throughout the pendency of the case, which began in 2017.

After October 2018, Samantha did not maintain a relationship with Noah. Samantha prevented reunification by not following the case plan, which included completing parenting classes, obtaining a psychological evaluation, obtaining a parenting assessment, maintaining a safe and stable home, maintaining a job, and maintaining regular contact with Noah. Overall, Samantha failed to make adequate improvement or mature as a parent and was demonstrably unfit. The evidence rebuts the presumption of fitness.

Based upon our de novo review of the record, we find clear and convincing evidence that Samantha's personal deficiencies have prevented her from performing her reasonable parental obligations to Noah in the past, that she is unable to give Noah necessary care and protection, and that the record establishes there is no prospect of improvement in the future. We find that it was shown by clear and convincing evidence that termination of Samantha's parental rights would be in Noah's best interests.

## VI. CONCLUSION

The juvenile court did not abuse its discretion when it denied Samantha's motion for a continuance, and it did not err when it determined that terminating Samantha's parental rights to Noah was appropriate under § 43-292(7) and was in the best interests of Noah. Accordingly, we affirm.

AFFIRMED.