IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF ALEXANDER R. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ALEXANDER R. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

PATRICK R., APPELLANT, AND LOUISA H., APPELLEE AND CROSS-APPELLANT.

Filed January 31, 2023.    Nos. A-22-401, A-22-402.

Appeals from the County Court for Otoe County: ROBERT B. O'NEAL, Judge. Affirmed.

Angela M. Minahan, of Reinsch, Slattery, Bear, Minahan & Prickett, P.C., L.L.O., for appellant.

Sarah G. Wiltse, Deputy Otoe County Attorney, for appellee, State of Nebraska.

Keith M. Kollasch, for appellee and cross-appellant, Louisa H.

Diane L. Merwin, of Fankhauser, Nelsen, Werts, Ziskey & Merwin, P.C., L.L.O., guardian ad litem.

PIRTLE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Patrick R. and Louisa H. appeal from the order of the county court for Otoe County, sitting as a juvenile court, terminating their parental rights to their minor children. In the order, the court found that the State had provided sufficient evidence that statutory grounds existed for the termination of Patrick and Louisa's parental rights under Neb. Rev. Stat. § 43-292 (Reissue 2016) and that termination was in the children's best interests. Upon our de novo review of the record, we affirm the juvenile court's order.

- 1 -

BACKGROUND

Patrick and Louisa are married and the biological parents of six children: Alexander (born in 2015), Calie (born in 2016), Natalia (born in 2017), Patrick III (born in 2018), Gabrial (born in 2019), and Selena (born in 2020). The Department of Health and Human Services (Department) has been involved with the children through various intakes since Alexander was born in 2015. On May 11, 2022, Patrick and Louisa's parental rights were terminated to all six of the children.

The juvenile court proceedings below were initiated on March 27, 2020, when the State filed a juvenile petition alleging that Alexander, Calie, Natalia, Patrick III, and Gabrial were juveniles as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) because they lacked proper parental care by reason of the fault or habits of Patrick and Louisa. Selena was not yet born at the time the petition was filed. Included with the petition was an affidavit authored by Kacie Hendrickson, a case worker with the Department. In the affidavit, Hendrickson described several medical appointments for the children that Patrick and Louisa had either canceled or not followed up on, including an important heart surgery for Natalia. Additionally, Hendrickson detailed a domestic violence incident in which Louisa loaded the children into a vehicle in an attempt to get away from Patrick, but the vehicle caught on fire. According to the affidavit, Patrick watched as Louisa struggled to remove all the children from the burning vehicle and Gabrial had to be taken to the hospital due to smoke inhalation. Hendrickson also reported that family support had been provided to the family since January 2020, but minimal progress had been made and the family home was unclean and infested with cockroaches. The children were removed from the home on March 27, 2020.

In April 2020, a safety plan was developed and agreed to by the State and Patrick and Louisa so that the children could return to the family home. The safety plan required Patrick and Louisa to work with family support workers on providing a safe and clean home environment and medical professionals in providing health care to the children. This included allowing the family support worker to monitor the well-being of the children through regular visitations. Patrick and Louisa were also instructed to maintain a consistent daily routine for the children that included cleaning, hygiene, and regular meals. The children were returned to the care of Patrick and Louisa on April 13.

On May 22, 2022, the State filed a motion for ex parte removal of the children due to Patrick and Louisa's failure to follow the safety plan. The children were removed from the family's home that same day. An amended petition was filed alleging that Patrick and Louisa had failed or refused to provide safe or suitable housing or proper shelter and care, failed or refused to provide sufficient food and basic necessities, did not provide proper care and supervision due to drug use and/or abuse, subjected the juveniles to physical abuse or subjected a sibling or other parent to physical abuse in the juveniles' presence, and neglected the medical needs of the juveniles. After a contested hearing, held on August 24, the court found that the allegations in the amended petition were true by a preponderance of the evidence. The children were, as a result, adjudicated to be within the meaning of § 43-247(3)(a).

On September 28, 2020, a separate petition was filed as to Selena a few days after her birth. This separate petition relied on the same allegations as those alleged in the amended petition filed in May 2022. Selena was removed from the care of Patrick and Louisa on the same day that the

separate petition was filed. Patrick and Louisa entered admissions to the allegations within the separate petition on April 8, 2021.

On September 15, 2021, the State filed a motion to terminate Patrick and Louisa's parental rights to Selena pursuant to § 43-292(2), (5), and (6). The same day, the State filed a motion to terminate Patrick and Louisa's parental rights to Alexander, Calie, Natalia, Patrick III, and Gabrial pursuant to § 43-292(2), (5), (6), and (7). A hearing on both of the motions was held over the course of 3 days on March 29, 30, and 31, 2022.

At the termination hearing, Hendrickson was called as a witness by the State. Hendrickson was the Department case worker for Patrick and Louisa from February 5 through December 12, 2020, and then again from April 5 through May 9, 2021. She testified at length regarding the family's history with the Department. Louisa's parental rights to two older children had been previously terminated by the Douglas County Juvenile Court in 2003 after it was reported that she had locked them inside the house and set a fire. On a prior occasion, Louisa had left one of these children in a snow bank when the child was 4 months old when she could not handle his crying. Hendrickson testified that in 2011, four additional children of Louisa were removed from her care by the state of Iowa. Ultimately those children were placed permanently with their father. After Alexander was born in 2015, the Department had received several intakes due to domestic violence in the home and medical issues with the children that had not been adequately addressed. The Department started a voluntary case with Patrick and Louisa in November 2019 after the domestic violence incident involving the vehicle catching on fire with the children inside.

Hendrickson testified that she was present when the children were initially removed from the home in March 2020. She described the children as extremely filthy with a pungent odor that burned her nostrils. Hendrickson testified that the children were so filthy that Department workers had to take the children to their office where a makeshift cleaning stall had been devised to clean them up before they could be placed in a foster home. Hendrickson observed Gabrial to have such a severe diaper rash that it was bleeding, Natalia to have scratches from head to toe, and Alexander and Calie to have bruises on their bodies. Alexander, Calie, and Natalia were placed in a foster home in Lincoln. Patrick and Gabrial were placed in a foster home in Nebraska City.

Hendrickson testified that she did not support the decision for the children to be returned to Patrick and Louisa's care in April 2020. Hendrickson went on to testify that the children were removed for a second time after it was reported that Alexander had gone to the hospital after falling through a window. Patrick and Louisa were unable to provide a cogent explanation for the incident. She described the second removal as chaotic, requiring law enforcement to assist after Patrick yelled and threatened to kill Hendrickson and her family. Neither parent would allow the workers to take the children.

According to Hendrickson, during the course of the juvenile court proceedings, five case goals were developed for Patrick and Louisa. The first goal was for Patrick and Louisa to improve their mental health and provide a safe and suitable living environment for the children. Patrick and Louisa each completed initial diagnostic interviews, psychological evaluations, and parenting assessments. Dr. Leland Zlomke completed Patrick's interview and assessments between July and November 2020 at the Nebraska Mental Health Center. Zlomke testified that he diagnosed Patrick with antisocial personality disorder, which, according to Zlomke, can make parenting difficult. Zlomke described Patrick's prognosis as "guarded" meaning it was possible for Patrick to improve,

but, in his opinion, unlikely because treatment requires long-term, frequent, intensive, and specialized care with a strong support network. He further testified he arrived at this opinion due to Patrick's failure to change despite previous professional intervention. As goals for Patrick, Zlomke recommended that Patrick maintain acceptable standards of cleanliness; ensure that the family home is adequately stocked with food; demonstrate responsibility for the care, feeding, and maintenance of the children; consistently and effectively participate in visitations; be actively and consistently involved in psychotherapeutic treatments to develop thinking changes, coping skills, and compensatory actions when problems arise; and show improvements over a period of several months.

Dr. Lisa Logden completed an initial diagnostic interview for Louisa in July 2020 and a psychological and parenting assessment in December 2020. Logden diagnosed Louisa with mild intellectual disability, histrionic personality disorder, alcohol use disorder, major depressive disorder recurrent mild with anxious distress, and panic disorder. Logden described Louisa's prognosis as "significantly guarded" because there were significant areas of development that were needed for Louisa to maintain an appropriate lifestyle for the children including assistance with financial budgeting, making complex decisions, and maintaining daily life skills as well as regulating her emotions. Logden recommended that Louisa engage in therapeutic intervention to address her emotional dysregulation, participate in random urinalysis screening, and participate in a group for persons who have experienced domestic violence. She also recommended that Louisa effectively and consistently participate in her visitations with the children.

An addendum to Patrick and Louisa's psychological evaluations completed by Logden revealed that both tested in the extremely low range of cognitive functioning. Because of their low IQ scores, the addendum recommended that the Department take care in how they communicated information with Patrick and Louisa and noted that they would especially benefit from a hands-on learning experience. However, the recommendations and goals for improvement remained the same.

Hendrickson testified that neither Patrick nor Louisa followed through with all of the recommendations from their evaluations, though they both attended individual therapy. Minimally, Louisa completed 18 urinalysis screenings out of 56 that were required. According to another case worker, 11 of the 18 tests were positive for drugs. Three of the tests were positive for drugs prescribed to Louisa but 8 tests came back positive for drugs for which Louisa had no prescription. Hendrickson testified that neither parent put in any real effort to rehabilitate themselves other than attending individual therapy.

The second case goal identified by Hendrickson was for Patrick and Louisa to improve their parenting skills. Hendrickson testified that there was no long-term sustainability in regard to their parenting, and that any progress Patrick and Louise made was not maintained.

Lori Larson, a Department case worker who took over supervision of the case in May 2021, testified that Louisa cancelled many visits citing a variety of health issues, such as positive COVID-19 tests, but was not able to provide documentation in support of her excuses. Louisa was observed moving about Nebraska City at times she reported that she was under quarantine. Larson also testified that Patrick and Louisa never completed a single parenting class despite multiple attempts to get them to take one. Hendrickson, as well as other visitation supervisors, testified that Patrick and Louisa needed constant direction and reminders to care for their children. Workers

repeatedly had to advise Patrick and Louisa on how to properly feed Selena and the importance of age-appropriate discipline. Visitations never improved beyond being fully supervised. At times, they were suspended due to Patrick's aggressive behavior.

The third case goal was for Patrick and Louisa to address their own trauma in order to provide their children with a healthy and appropriate environment free of violence and verbal threats. Hendrickson testified that the Department wanted Patrick to complete a batterer's intervention program and Louisa to participate in a victim advocacy group, but neither made progress on these goals. Larson testified that domestic violence, and in particular, Patrick's aggressive behavior, remained an issue as recently as February 2022. Larson then described an incident on February 22 in which Louisa called her and told her that Patrick had tried to attack her, and that he had a plan to kidnap the children. Louisa reported to Larson that Patrick had found the addresses of the foster homes and was going to gain access to a gun. After this incident, visitations between Louisa, Patrick, and the children were again suspended.

The fourth goal identified by the Department was for Patrick and Louisa to tend to the medical needs of their children. Hendrickson as well as the two foster mothers testified that they used various means of communication to tell Patrick and Louisa about medical appointments including group text messages, emails, phone conversations, and in-person reminders. However, both foster mothers testified that Patrick never attended any of the medical appointments for the children, and Louisa only attended a couple of them sporadically. Neither was present for Natalia's heart surgery.

The last goal identified by Hendrickson was for Patrick and Louisa to provide a living environment that was free of physical violence and vulgar language. Hendrickson testified that there were some visitations where the parents were able to remain calm and refrained from using language or physical aggression toward their children, but these improvements were never maintained in the long term. Larson testified that when visitation supervisors attempted to provide redirection to Patrick, he would often get angry and aggressive with the worker in front of the children. Patrick threatening the workers was an ongoing issue throughout this case. Patrick's visitation rights were suspended in February 2021 due to several law enforcement contacts involving Patrick that caused a general safety concern. Hendrickson also testified that Louisa would lose her temper with the children and use vulgar language with them. Neither parent was able to gain understanding how to appropriately discipline the children.

Additionally, each of the foster mothers testified about the children. Both stated that when the children came to them in 2020, they were dirty and developmentally delayed. The oldest children, ages 4, 3, and 2 at the time, were described as basically nonverbal. Their mode of communication was to point and grunt. One foster mother testified that Alexander, the oldest child, showed aggressive behaviors such as biting, kicking, and head butting when he first arrived. Both foster mothers testified that the children had shown great improvement since being placed with them. The children are now reaching developmental milestones and are able to communicate openly.

Kareena Boko, a mental health therapist for Alexander, Calie, and Natalia testified that the children have suffered through a lot of trauma. Boko opined that the children need a safe and stable environment as well as a caregiver that is willing and able to set aside their own needs to help the children meet their emotional needs. Boko testified that the foster homes have provided such an

environment and as a result, the children have made significant attachments that have allowed them to grow and develop.

Patrick and Louisa's parental rights were terminated in an order dated May 11, 2022. The juvenile court found that statutory grounds existed to terminate their rights pursuant to § 43-292(2) because Patrick and Louisa have substantially and continuously or repeatedly neglected and refused to give the children necessary parental care and protection as evidenced by the many referrals alleging abuse and neglect of the children since Alexander was born. The court also found statutory grounds existed to terminate Patrick and Louisa's rights pursuant to § 43-292(5) because they are unable to discharge their parental responsibilities due to mental illness or mental deficiency and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period since both parents have refused to acknowledge their limitations or seek assistance. The court found that the State proved that reasonable efforts to preserve and reunify the family had failed pursuant to § 43-292(6) because both Patrick and Louisa had failed to comply with the court-ordered reunification plan, had shown only minimal compliance with services offered by the Department, and were unable to maintain any improvements in their parenting skills. Finally, the court found that Alexander, Calie, Natalia, Patrick III, and Gabrial had been in out-of-home placement for 15 or more months of the most recent 22 months pursuant to § 43-292(7). The court also found that termination was in the best interests of the children because the children were doing well in the current foster placement, and the parents have shown themselves to be unwilling or unable to rehabilitate themselves.

Patrick appeals and Louisa cross-appeals.

ASSIGNMENT OF ERROR

Patrick and Louisa assign, consolidated and restated, that the juvenile court erred in finding that there was sufficient evidence to terminate their parental rights.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *Id*.

ANALYSIS

Patrick and Louisa allege that the court erred in finding that there was sufficient evidence to terminate their parental rights. The statutory grounds for terminating parental rights are listed in § 43-292. *In re Interest of Mateo L. et al., supra*. The State has the burden to show by clear and convincing evidence that one of the statutory bases enumerated in § 43-292 exists and that termination is in the children's best interests. *In re Interest of Mateo L. et al., supra*. Any one of the bases for termination codified in § 43-292 can serve as the basis for termination when coupled with evidence that termination is in the best interests of the child. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). Upon our de novo review, we find that the

State met its burden in proving that statutory grounds existed for the termination of Patrick and Louisa's parental rights.

*Statutory Grounds for Termination of Parental Rights to*
*Alexander, Calie, Natalia, Patrick III, and Gabrial.*

The State sought to terminate Patrick and Louisa's parental rights to Alexander, Calie, Natalia, Patrick III, and Gabrial pursuant to § 43-292(2), (5), (6), and (7). The court found that the State had proved by clear and convincing evidence that all four grounds for termination existed. Section 43-292(7) provides for termination when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." That period of time was set by the Legislature as a guideline for what would be a reasonable time for parents to rehabilitate themselves to a minimum degree of fitness. *In re Interest of Mateo L. et al., supra.* This section operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of the parent. *Id.* In other words, if the 15-out-of-22 formula is met, the requirements of § 43-292(7) are met. *In re Interest of Mateo L. et al., supra.*

Evidence adduced at the termination hearing shows that Alexander, Calie, Natalia, Patrick III, and Gabrial were removed from Patrick and Louisa's care on March 27, 2020, and returned under a safety plan on April 13. The children were then removed again on May 22 and have remained out of the home continuously since then. At the time the State filed the motion for termination of parental rights, Alexander, Calie, Natalia, Patrick III, and Gabrial were out of the home for over 16 of the most recent 22 months. This meets the standard defined in § 43-292(7).

*Statutory Grounds for Termination of Parental Rights to Selena.*

Because Selena was not born until later, the State did not move to terminate Patrick and Louisa's rights under § 43-292(7); therefore, we must analyze the evidence of the other subsections. The court found that the State had proven grounds existed to terminate the parental rights to Selena under § 43-292(2), (5), and (6) by clear and convincing evidence. Subsection (2) provides for the termination of parental rights when the parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection. While § 43-292(2) does not dictate that whenever a parent has neglected a sibling in the past, parental rights to any future children will automatically be terminated without giving the parent an opportunity to present evidence of current circumstances, the statute as a whole states that prior neglect can be a basis for termination in conjunction with proof by the State which establishes that termination is in the best interests of the minor children involved in the current proceedings. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010). Past neglect, along with facts relating to current family circumstances which go to best interests, are all properly considered in a parental rights termination case under § 43-292(2). *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015). A parent's failure to provide an environment to which his or her children can return can establish substantial, continual, and repeated neglect. *Id.*

Evidence presented at the termination hearing established a pattern of repeated neglect from Louisa to her children dating back to 2003 and of repeated neglect from Patrick since 2015.

Louisa's parental rights to her oldest two children were terminated in 2003 after she locked them inside a house and set a fire. Four more of her children were removed from her care in 2011 in Iowa due to her neglect. The Department's office in Nebraska City started receiving intakes as soon as 2 months after Alexander was born. Over the next several years, the Department received numerous referrals alleging abuse and neglect by Patrick and Louisa. In 2020 when the children were removed, the case worker described the children as extremely filthy with a pungent odor. The children had not been bathed for an extended period of time. The house was also unclean and infested with cockroaches. Several of the children had unexplained bruises and scratches, and one child had a diaper rash so severe it caused bleeding.

In addition to the abysmal living conditions, Patrick and Louisa were refusing to take the children to important medical appointments. Natalia was in need of an important heart surgery, but Patrick and Louisa repeatedly postponed the appointment. All of the children were delayed developmentally and unable to communicate in an age-appropriate fashion. Once in foster care, the children were able to attend regular medical appointments and made progress in their development. Despite multiple communications from case workers and the foster mothers, Patrick did not attend a single medical appointment and Louisa only attended a few appointments. Neither parent made an effort to address the children's needs.

Selena was removed from Patrick and Louisa's care just 2 days after she was born. In working toward the court ordered rehabilitation plan, Patrick and Louisa never made progress past fully supervised visitations with any of the children. Selena was never returned to the care of Patrick and Louisa. Because the State established a clear pattern of neglect of Selena's siblings and that neither parent provided an environment for Selena to return to, statutory grounds for termination of parental rights exist under § 43-292(2) for the termination of Patrick and Louisa's parental rights. Because any one of the bases for termination of parental rights codified in § 43-292 can serve as the basis for the termination, we need not consider any other statutory bases for termination. See *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020).

*Best Interests of Children.*

Under § 43-292, once the State has shown that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the children. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). In situations where termination of parental rights is based on § 43-292(7), the Nebraska Supreme Court has held that appellate courts must be particularly diligent in their de novo review of whether termination is in the child's best interests. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). Section 43-292(7) does not require the State to adduce evidence of any specific fault on the part of a parent, so evidence to prove the statutory grounds for termination under the other sections will be highly relevant to the best interests of the juvenile. *In re Interest of Aaron D., supra.* Thus, it is in the context of analyzing the best interests of the juvenile that courts must respect a commanding interest in the accuracy and justice of the decision to terminate a parent's rights. *Id.*

There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent, which is overcome only when the State has proven that the parent is unfit. *In re Interest of Noah C.*, 306 Neb. 359, 945 N.W.2d 143 (2020). Parental unfitness has been defined as "a personal deficiency or incapacity which has prevented, or will probably

prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being." *Id.* at 370, 945 N.W.2d at 151.

The best interests of the child require termination of parental rights when a parent is unable or unwilling to rehabilitate herself or himself within a reasonable period of time. *In re Interest of Leyton C. & Landyn C., supra.* Permanency is in a child's best interest because children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015).

The record in this case reveals that Patrick and Louisa made minimal to no progress in their rehabilitation plan. The Department set goals for Patrick and Louisa to (1) improve their mental health, (2) improve their parenting skills, (3) address their trauma to provide a healthy environment for the children, (4) tend to their children's medical needs, and (5) provide a living environment for their children that was free of violence and verbal threats. Patrick and Louisa made minimal progress in improving their mental health and addressing their trauma. They obtained their initial diagnostic interviews and subsequent parenting and psychological evaluations and have attended individual therapy. However, both Patrick and Louisa have mental health diagnoses that require long-term, intensive treatment. Neither Patrick nor Louisa have completed all the treatment recommendations from their completed evaluations. For example, Patrick refused to attend a batterer's intervention course and Louisa would not participate in a victim advocacy group. Without a dedicated effort to improve, Patrick and Louisa's mental health diagnoses and limited cognitive function make the job of productively parenting their children extremely difficult.

Patrick and Louisa have been unable to maintain any long-term improvements in their parenting skills or in providing a healthy living environment for their children. Several visits were cancelled by Louisa without good reason. Visitation and case workers testified that both parents needed constant redirection to watch and care for the children during visits. Even then, Patrick often ignored the advice of the professionals and would become angry and aggressive toward them in front of the children. Domestic violence issues between Patrick and Louisa continued throughout the lifespan of this case. In February 2022, visits were suspended due to Patrick threatening to kidnap the children at gunpoint. Still, Patrick and Louisa have refused to take any parenting classes nor have they demonstrated consistent, long-term improvement in caring for their children which is necessary for reunification.

Finally, Patrick and Louisa did not tend to their children's medical needs. One of the main issues from the inception of this case was that Patrick and Louisa were not taking the children to necessary medical appointments. This included postponing an important heart surgery for Natalia. Since the children have been in foster care, they have regularly attended medical appointments. Natalia finally received her heart surgery. The foster mothers and case workers testified that they shared the dates of medical appointments with Patrick and Louisa using multiple methods of communication. Hendrickson and Larson testified that they would inform Patrick and Louisa of important events in person, through text messaging, and through phone calls. Despite all the communication, Patrick did not attend any of the medical appointments and Louisa's attendance was sporadic at best.

In contrast, the children's foster mothers have been actively engaged in the medical and emotional care of the children. They have attended medical appointments and worked with therapists to implement strategies for the children to grow and develop. The children have shown

great progress because of this work. All of the children have met developmental milestones while in foster care and have learned how to effectively communicate their wants and needs. Overall, the children have shown significant progress while Patrick and Louisa have shown none. "Where a parent is unwilling to rehabilitate herself or himself within a reasonable period of time, the best interests of the child require termination of parental rights." *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 56, 638 N.W.2d 510, 520 (2002).

## CONCLUSION

For the reasons stated above, we affirm the order of the juvenile court terminating the parental rights of Patrick and Louisa to their minor children.

AFFIRMED.