IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF CARTER P.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF CARTER P., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

CARTER P., APPELLANT.

Filed December 31, 2024.    No. A-24-382.

Appeal from the County Court for Dodge County: THOMAS J. KLEIN, Judge. Affirmed.

Jerrod Jaeger, of Jaeger Law Office, P.C., L.L.O., for appellant.

Pamela Lynn Hopkins, Dodge County Attorney, and Jared Roland for appellee State of Nebraska.

PIRTLE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

The county court for Dodge County, sitting as a juvenile court, adjudicated Carter P. for assault in the third degree, finding that the State proved beyond a reasonable doubt that Carter "tickl[ed]" the victim's "balls" and caused the victim to "feel apprehension" of being harmed. Carter appeals, alleging that there was insufficient evidence to prove he committed the offense of assault. We affirm the adjudication.

## BACKGROUND

On December 5, 2023, the State filed a petition in the juvenile court alleging that Carter was a juvenile within the meaning of Neb. Rev. Stat. § 43-247(1) (Reissue 2016) in that he committed sexual assault in the third degree, a Class I misdemeanor, in violation of Neb. Rev. Stat.

- 1 -

§ 28-320 (Reissue 2016). On February 15, 2024, the State amended the petition and now alleged that Carter was a juvenile within the meaning of § 43-247(1) in that he committed assault in the third degree, a Class I misdemeanor, in violation of Neb. Rev. Stat. § 28-310 (Reissue 2016).

An adjudication hearing took place on March 4, 2024. At that time, Carter was 12 years old; the victim, and another juvenile involved in the incident (Jarrett C.), were both 13 years old. All three of them were seventh grade students at the same middle school at the time of the November 15, 2023, incident. After school that day, Carter, Jarrett, and the victim were behind a group of boys walking to basketball practice. At some point, Jarrett pushed the victim to the ground and Carter got partially on top of the victim and "tickled [the victim's] balls." The evidence from the adjudication hearing provides the following additional details.

Officer Kodi Classen testified about his interview with Carter at the middle school on November 20, 2023. Carter's parents were also present. The bodycam footage from the interview was admitted into evidence as exhibit 1. During the interview, Carter admitted that the victim did not give him consent to touch his genitals but claimed that "[the victim] didn't tell him he couldn't." Carter thought "it was just a joke" and that the victim should have been in on it "because everybody else always is." Carter also said that he and Jarrett told the victim they were going to "jump [him] again" after basketball practice, and the victim responded, "No."

The middle school principal testified that the typical protocol following an incident like this is to talk to the students and then ask them to write a statement "[p]retty much right away." Carter's and Jarrett's written statements were received into evidence. Carter's statement indicated that Jarrett pushed the victim to the ground and "took his back pack and kind of dragged him." "Then I tickled [the victim's] butt" and "then we helped him up and gave him back his back pack." Carter also wrote, "I did tickle his butt and balls." Jarrett's statement indicated that he pushed the victim down and took his backpack. "I thought we were just having fun but when I pushed him Carter got on top of him and started tickleing [sic] him at his butt and after that I helped [the victim] up and gave him his back pack and we laughed about it but at the time I didn't know what Carter did so I thought we were just having fun." But when Jarrett found out what Carter did, Jarrett "thought it was weird [that] he tickled him there."

At the adjudication hearing, Jarrett testified that his written statement was accurate, except that "I said he was tickling him at his butt, and it was on the front side. So I messed up on that part." Jarrett agreed that he used the word "bullying" in his written statement. Carter testified that his written statement was "inaccurate," that he had "worded things wrong" because he did not have "much time to think about it before then." Carter acknowledged that he "tickled" the victim's "private area for maybe a second, not too long." He claimed he and Jarrett helped the victim up afterwards and that "we were laughing together" and walked with each other to basketball. Carter testified that "tickling . . . balls" is a "thing everyone does to each other on the basketball team." He said that it has happened to him and that it is "[n]ormal," "[j]ust a thing that happens." He did not know there was a problem until he "got called down to the office the next week."

On the other hand, the victim testified that he did not laugh or "play along" at any point. He explained that he and the other two boys were walking to basketball practice behind the rest of the team when he "got jumped. And then [his] balls were tickled." He said the other two boys "grabbed" him and he "got pushed to the ground." Carter then "tickled the bottom of [his] balls." No one asked permission to touch him there, and it was "shocking" and "horrible." He did not "cry

- 2 -

out" because he was "in shock at what was happening," did not "really know what to do," and agreed that it "happened so fast." The victim testified that it never happened before, and he did not want it to "ever happen to [him] again." After the incident, the victim "ran" to the gym once he got up because he knew the coaches and team would be there. He did not tell the coach about it because he did not "really feel comfortable talking to him about it." But he later told his parents, and they called the school. While the victim acknowledged that he did not suffer any physical pain, he acknowledged feeling threatened during the incident. He said it was one of the reasons he transferred schools. He responded "[n]o" when asked if it was normal for the "guys on the team to be tickling each other's balls" or "any of their privates." He agreed he did not have physical pain or marks from the incident but responded affirmatively when asked if there was "emotional pain" and whether he felt threatened. He acknowledged that there is physical contact when playing basketball, but stated, "Tickling people's private parts was unnecessary and inappropriate at that time."

The juvenile court entered an order of adjudication on April 25, 2024, finding that the State proved beyond a reasonable doubt that Carter committed the offense of assault in the third degree and was a juvenile within the meaning of § 43-247(1).

Carter appeals.

ASSIGNMENT OF ERROR

Carter assigns that the juvenile court erred in finding there was sufficient evidence to adjudicate him for assault in the third degree.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Jeovani H.*, 316 Neb. 723, 6 N.W.3d 539 (2024). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of facts over the other. *Id.*

ANALYSIS

Pursuant to § 43-247(1), the juvenile court in each county shall have jurisdiction of any juvenile who has "committed an act other than a traffic offense which would constitute a misdemeanor or an infraction under the laws of this state, or violation of a city or village ordinance, and who, beginning July 1, 2017, was eleven years of age or older at the time the act was committed." When an adjudication is based upon § 43-247(1), the allegations must be proved beyond a reasonable doubt. Neb. Rev. Stat. § 43-279(2) (Supp. 2023).

Section 28-310 defines assault in the third degree as follows:

(1) A person commits the offense of assault in the third degree if he:

(a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or

(b) Threatens another in a menacing manner.

(2) Assault in the third degree shall be a Class I misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it shall be a Class II misdemeanor.

We agree with the State's acknowledgement that there was no physical pain or bodily injury involved, thus making § 28-310(1)(a) inapplicable. See Neb. Rev. Stat. § 28-109(4) (Reissue 2016) ("[b]odily injury shall mean physical pain, illness, or any impairment of physical condition"). Therefore, we focus on whether Carter threatened the victim in a menacing manner under § 28-310(1)(b).

Carter disagrees with the juvenile court's finding that the victim "felt threatened" by Carter's actions. Brief for appellant at 7. He claims there was "simply no evidence from which one could reasonably infer that a threat, verbal or physical, was levied by [Carter]." *Id*. He argues that "[t]ickling cannot constitute 'bodily injury' or a 'menacing threat' beyond a reasonable doubt," and "[e]ven if it could, there is no set of facts from which to infer that [Carter's] state of mind was to intentionally, or even recklessly, cause the prohibited harm." *Id*. at 6. He contends that "horseplay cannot amount to menacing," and that "[o]ne 12 year old tickling another 12 year old for a matter of seconds cannot result in the reasonable belief that the receiving 12 year old would be bodily harmed." *Id*. at 9.

While it may be true that "tickling" and "horseplay" will generally not amount to menacing conduct, those words also suggest consensual activity, which these facts do not support. Further, neither "tickling" nor "horseplay" captures the serious and violative nature of nonconsensual intentional touching of a person's genital area, particularly when being held down against one's will. We conclude that the law applied to these facts supports the conclusion reached by the juvenile court.

In *State v. Grant*, 310 Neb. 700, 717, 968 N.W.2d 837, 852 (2022), the Nebraska Supreme Court noted that it had "previously examined the meaning of the words, 'assault,' 'threaten,' and 'menacing.'" It stated, "A criminal 'assault' includes the intentional doing of an act which places another person in reasonable apprehension of receiving bodily injury. To 'threaten' is commonly understood to mean promising punishment, reprisal, or distress. The meaning of 'menacing' includes the showing of an intention to do harm." *Id.* at 717, 968 N.W.2d at 852 (quoting *State v. Kunath*, 248 Neb. 1010, 540 N.W.2d 587 (1995)). It further explained,

These three terms have typically been reviewed in conjunction with one another in order to better define what constitutes a threat for purposes of third degree assault. According to statute, a person commits the offense of assault in the third degree if he or she intentionally, knowingly, or recklessly causes bodily injury to another person or threatens another in a menacing manner.

Where § 28-310(1)(b) requires application of all three of the above terms, we held that § 28-310(1)(b) "renders unlawful a promise to do another person bodily harm which is made in such a manner as to intentionally cause a reasonable person in the position of the one threatened to suffer apprehension of being so harmed." Thus, this statute is violated when a person acts "in a manner as to intentionally cause a reasonable person in the position of the one threatened to feel apprehension of being [bodily] harmed." A fear of bodily harm

or injury must be shown because all three terms, "assault," "threaten," and "menacing," are applicable.

*State v. Grant*, 310 at 717-18, 968 N.W.2d at 852-53.

The intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident. *In re Interest of Elijahking F.*, 313 Neb. 60, 982 N.W.2d 516 (2022). Our case law does not require that the promise to do another harm be a verbal promise in order to constitute assault in the third degree. See *State v. Kunath, supra*. Such intent can be inferred from words or acts and the circumstances surrounding the incident. *Id.*

In *State v. Kunath, supra*, there was no evidence that the defendant verbally promised to inflict bodily harm upon the victim in that case, but the Nebraska Supreme Court concluded that there was nevertheless sufficient evidence to support the factfinder's conclusion that the defendant threated the victim in a menacing manner. "Threatening words are not needed to reinforce a promise to do harm when one attempts to use her knees and places her hands upon the body of another." *Id.* at 1015, 540 N.W.2d at 591.

The juvenile court concluded that there was "proof beyond a reasonable doubt, that by 'tickling [the victim's] balls,'" Carter acted in such a manner as to intentionally cause a reasonable person in the position of the one threatened to feel apprehension of being bodily harmed. We agree. The victim was pushed to the ground and held down while Carter intentionally touched the victim's genital area without his consent. Further, when the victim got free, Carter and Jarrett told him they would "jump [him] again" after practice. The victim responded affirmatively when he was asked if during the incident he ever felt threatened. He also stated that the event was "shocking" and "horrible." He "didn't really know what to do" because that had "never happened [to him] before." Additionally, after Carter touched his genitals, the victim ran to the gym for safety. While Carter and Jarrett testified that they helped the victim up and that the victim walked to the gym with them, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of facts over the other when the evidence is in conflict. See *In re Interest of Jeovani H.*, 316 Neb. 723, 6 N.W.3d 539 (2024).

Carter got partially on top of the victim and touched him in his genital area without the victim's consent. Although he told Officer Classen that "it was just a joke," his actions caused the victim to feel threatened, particularly when considering that Carter and Jarrett told the victim they were going to "jump [him] again" after practice. The evidence established beyond a reasonable doubt that Carter's actions and words caused the victim to feel apprehension of being bodily harmed.

## CONCLUSION

For the foregoing reasons, we affirm the juvenile court's adjudication of Carter.

AFFIRMED.