IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF ALAINA G.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF ALAINA G., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

CRYSTAL S., APPELLANT.


Filed April 22, 2025.    No. A-24-733.


Appeal from the County Court for Dawson County: JEFFREY M. WIGHTMAN, Judge. Affirmed.

Derek L. Mitchell for appellant.

R. Garrett Goodwin, Acting Dawson County Attorney, for appellee.


RIEDMANN, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Crystal S. appeals from an order of the Dawson County Court, sitting as a juvenile court, which terminated her parental rights to her daughter, Alaina G. Upon our de novo review of the record, we affirm the juvenile court's order.

## BACKGROUND

Crystal S. is the biological mother of Alaina, born in August 2023. Alaina's biological father is unknown.

The Nebraska Department of Health and Human Services (the Department) first came into contact with Crystal in November 2018. Since then, she has been involved in two prior court-supervised cases with the Department. The prior cases concerned Crystal's three older

- 1 -

children. Throughout those cases, Crystal exhibited several barriers to reunification, including methamphetamine use, resistance to drug testing, a lack of participation in team meetings, inconsistent communication, and concealing her location from the Department. There was also a pattern of domestic violence in her life. Crystal ultimately relinquished her parental rights to her two oldest children in June 2022. Those children were placed with Crystal's mother. She relinquished her rights to her third child in January 2023 resulting in that child's adoption.

The present case was initiated in August 2023 following Alaina's birth. When Alaina was born, she tested positive for methamphetamine and amphetamines. Crystal admitted to using methamphetamine daily throughout her pregnancy. Law enforcement immediately placed Alaina in a 48-hour police hold.

The following day, the State filed a petition alleging that Alaina was a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) due to the faults or habits of Crystal. Specifically, the petition alleged that Crystal neglected or refused to provide proper or necessary subsistence, education, or other care necessary for Alaina's health, morals, or well-being. The petition further alleged that Alaina was in a situation injurious to her health or morals.

The State also filed a motion for temporary custody with a supporting affidavit. The motion alleged that Crystal had admitted to using methamphetamine 3 days before giving birth to Alaina. Hospital staff advised the Department that Alaina exhibited symptoms consistent with substance withdrawal, including being jittery and emitting a high-pitched cry. Crystal informed the Department that with respect to Alaina, she did not want to work a case and "want[ed] to do an adoption."

The motion further alleged that the putative father, Luis G. (who was later determined not to be Alaina's father), was arrested for assaulting Crystal on August 4, 2023. Luis was charged with third degree domestic assault and was incarcerated at the time of Alaina's birth. He, too, had a history of methamphetamine use.

The court granted the State's motion and ordered that Alaina be taken into the temporary custody of the Department pending a placement hearing. Alaina has remained in the Department's custody throughout these proceedings.

A placement and adjudication hearing was held on September 1, 2023. Crystal admitted to the allegations in the State's petition. The court accepted her admission and entered an order finding that Alaina was a juvenile as defined by § 43-247(3)(a). The court ordered that Alaina be placed in a foster home under the supervision of the Department. The selected foster home was a kinship placement, meaning that one of Alaina's older siblings was also placed in the home. Alaina's sibling was adopted by that foster family in August 2023. A guardian ad litem (GAL) was appointed for Alaina, and the Department was ordered to prepare a case plan and court report. The court also ordered the Department to provide reasonable visitation to Crystal and to pay for her drug testing.

A disposition hearing was held on October 4, 2023. Our record does not contain a bill of exceptions from this hearing. However, during the termination of parental rights trial, Crystal admitted that she did not attend this hearing. The Department's court report from this time indicates that, due to Crystal's case history, the Department recommended adoption as the only permanency goal in this case. The Department stated in its report that "[i]t is clear that Crystal has not changed her ways in terms of using methamphetamine regardless of the services put into place for her in

the previous case. Crystal has not utilized any services from [the Department] since this case opened." The court ultimately adopted the Department's permanency goal recommendation of adoption.

A review hearing was held on January 10, 2024. Crystal did not appear. The court found that the Department had made reasonable efforts toward reunification. Despite these efforts, the court determined that the conditions leading to Alaina's removal had not changed, and thus, the court ordered that Alaina was to remain in foster care.

On March 7, 2024, the State and the GAL filed a joint motion to terminate Crystal's parental rights to Alaina. The motion alleged that Crystal's parental rights should be terminated under Neb. Rev. Stat. § 43-292(2) and (4) (Reissue 2016). The motion specifically alleged that Crystal had substantially and continuously or repeatedly neglected and refused to give Alaina or a sibling of Alaina necessary parental care and protection. The motion elaborated that Crystal had three children removed from her care prior to this case and that reunification could not be achieved with those children due to Crystal's continued use of methamphetamine and amphetamine and her inability to realize case goals. The motion also alleged that Crystal was unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is seriously detrimental to Alaina's health, morals, or well-being. The motion alleged that termination of Crystal's parental rights was in Alaina's best interests.

A review hearing was held on March 20, 2024. Once again, Crystal did not appear. Our record does not contain a bill of exceptions from this hearing.

On April 17, 2024, another review hearing was held. Crystal appeared at this hearing. The court confirmed that Crystal was aware of the motion to terminate her parental rights and that she understood the motion. The court also advised Crystal of her rights and confirmed that she understood those rights.

The court then conducted a review hearing wherein evidence was received concerning the progress of the case. Crystal testified that she had recently completed substance abuse treatment and was now living a drug-free lifestyle. Amanda Leighton, Crystal's case manager from the Department, testified that Crystal had reported completion of treatment, placement in a half-way house, participation in AA and NA, and the beginning of employment. However, Crystal had not signed any releases allowing her to verify this information. Similarly, although Crystal stated that she had been testing negative for use of controlled substances, she provided no verification. Leighton did not recommend any change as to the case's permanency goal.

Crystal asked the court to order drug testing and requested that the permanency goal be amended to include reunification. The court denied Crystal's request to adjust the permanency goal, stating that "[t]oo much time has passed with no attention to this case and no progress made in the case." However, the court ordered that visitation between Crystal and Alaina should continue. The court noted that since the goal remained adoption, it would serve no purpose to order drug testing. The court noted that if Crystal was drug testing through another program, she could submit evidence of those test results at the termination hearing.

Trial on the motion for termination of Crystal's parental rights was held on July 2, 2024. At trial, the court heard additional testimony from both Leighton and Crystal as well as Alaina's foster mother. The court also received several exhibits into evidence including three of the Department's case reports filed earlier in the case, four GAL reports filed earlier in the case,

Crystal's certification of achievement for completing a wellness action recovery plan at a residential treatment center, Crystal's certificate of achievement for her successful completion of a short-term residential treatment program, two of Crystal's treatment and prevention plans, and copies of Crystal's AA attendance sheets.

Leighton testified that she worked for the Department as a permanency specialist. She explained that a permanency specialist is typically brought onto a case when reunification is no longer considered a safe or appropriate option for a child. The permanency specialist then determines the most appropriate long-term care for the child. Leighton was assigned to Crystal's prior cases and the present case in this capacity.

Although Leighton was assigned to the case to facilitate adoption efforts, the Department still made efforts toward reunification. The case reports indicate that Crystal's case plan goals included: addressing her substance use by completing a drug evaluation, following all recommendations from that evaluation, and submitting to random drug testing; meeting her own mental health needs as evidenced by completing a mental health evaluation and following all recommendations; obtaining and maintaining legal employment and appropriate housing; and improving her parenting skills as evidenced by participating in family support services and visitation. The Department stated that Crystal needed to demonstrate progress on these goals continuously for 12 months.

Leighton testified that methamphetamine use had been a long-term problem for Crystal. In Crystal's prior cases, she irregularly subjected herself to drug testing via patches. Some test results were positive for drug use, while some patches were improperly removed, and others showed signs of tampering. Leighton testified that Crystal's drug use contributed significantly to her inconsistent case progress. Accordingly, a strong emphasis was placed on Crystal demonstrating the ability to live a sober, drug-free lifestyle.

During the first several months of the case, Crystal did not make any effort to achieve her case goals. At the first prehearing conference, Crystal was offered 20 hours of supervised visitation each week with transportation provided by the Department. Crystal agreed to this arrangement and set a schedule with the visitation provider. But rather than exercising a single visitation period, Crystal left the country to visit her father in Mexico. The visitation provider attempted to contact her to no avail.

Crystal informed the Department that if she "like[d] it [in Mexico], she w[ould] stay there." She returned to the United States sometime in October or November 2023. Her absence during those months seriously limited her communications with the Department and the Department's ability to offer her services. Crystal failed to complete a mental health evaluation and refused to submit to drug testing, which was a requirement for visitation.

On November 11, 2023, after learning from Alaina's foster mother that Crystal had returned from Mexico, Leighton contacted Crystal in an effort to begin visitation and drug testing. Crystal declined this offer and indicated that she wanted to first secure stable housing and employment. Crystal did not communicate any immediate plans to secure housing, nor did she apply for housing assistance at that time. Leighton reminded Crystal that the permanency goal was adoption and that if she wanted to work her case plan, it was important that she started engaging in parenting time immediately. Due to Crystal's actions, no agency supervised in-person visitations occurred between Crystal and Alaina.

Nevertheless, the foster family provided Crystal with several opportunities for in-person contact with Alaina. These opportunities included celebrations, weddings, and holidays hosted by Crystal's biological family. Alaina's foster family regularly attended these events to foster the relationships between Alaina, Alaina's older sibling, and their relatives. The foster mother testified that Crystal did not attend every event, but that when Crystal was present, her interactions with Alaina were brief and inattentive. Leighton described these visits as "[s]poradic, short, . . . [un]supervised," and unstructured.

On December 5, 2023, Crystal reported to law enforcement that she had been assaulted by the alleged father of her older children. She was taken to the emergency room for evaluation. At some point thereafter, Crystal admitted to taking prescription medication with the intent of self-harm. She was admitted to a psychiatric center for treatment and was discharged on December 13. She was then admitted to St. Monica's, a residential substance abuse treatment center. This stay ended unsuccessfully after Crystal had a disagreement with another patient. Crystal spent the following 2 weeks living with her mother. During that time, Crystal did not reach out to Leighton to begin visitation with Alaina or work on any of her case plan goals.

From January 3 through January 22, 2024, Crystal enrolled at Sunrise Place, another residential treatment center. On January 22, she was transferred to St. Monica's where she remained until her graduation on March 13, 2024. Leighton reported that during Crystal's second stay at St. Monica's, Crystal attended a family team meeting for the first time since August 2023. Leighton testified that while Crystal was in treatment, she consistently attended team meetings. A counselor from St. Monica's emailed Leighton to verify that Crystal had successfully graduated from the program. However, Crystal did not sign any release forms, thus preventing Leighton from accessing Crystal's treatment plans.

In March 2024, Crystal began participating in virtual, Department-supervised visitation with Alaina. Crystal's attendance at these visits was sporadic. Out of 22 offered visitations, she attended 12 times. As the visits were 30 minutes long, Crystal attended, in total, 6 hours of virtual visitation from the opening of the case until the termination hearing. Due to her inconsistent attendance, Crystal never achieved in-person, Department-supervised visits with Alaina.

Leighton testified that ideally, Alaina would have had immediate and consistent in-person bonding time with Crystal. Leighton testified that the Department would have preferred supervised visitation throughout the case to measure Crystal's attendance and parenting skills. Leighton explained that in a typical case, parents start with 20 hours of visitation per week. If the parent demonstrates progress, visits may be increased and transitioned into the parent's home. This process ensures that the child is safe and that the parent can meet the child's needs. Without this structure and supervision, the Department could not adequately adjust Crystal's services or case goals, which would have in turn bolstered reunification efforts.

At the time of the July 2024 termination hearing, Leighton testified that based on her prior experience with Crystal, Crystal seemed healthier in recent months. The foster mother concurred and testified that she had seen positive change in Crystal. However, Leighton testified that Crystal had still not achieved several of her case plan goals. While Crystal reported to Leighton that she had been sober since December 2023, Leighton testified that she had no way to confirm that information. Crystal also reported that she was regularly attending medication management and that she had enrolled in counseling but had recently stopped attending. Leighton was unable to

confirm this information because Crystal did not execute the release forms the Department had requested. Leighton had not received a substance abuse evaluation for Crystal either.

Additionally, Crystal had not secured stable housing. After completing her residential treatment program, she moved into a half-way house as part of her aftercare program. On June 4, 2024, Crystal was terminated from this facility for failing to adequately document her work hours. She moved in with a friend and was attempting to find other living arrangements at the time of the trial. She testified that she was planning to move in with a man she had met through NA who also had a history of methamphetamine use.

Crystal also never attended any of Alaina's medical appointments despite the foster mother informing Crystal of those appointments ahead of time. The foster mother additionally contacted Crystal during appointments to see if Crystal wanted to participate. The foster mother testified that Crystal voluntarily chose not to participate and deferred medical decisionmaking exclusively to the foster family.

Crystal testified at the trial that she was sober and ready to handle parental duties. She testified that she was continuing in AA and participated in a drug test on July 1, 2024, which was negative for all controlled substances. She further testified that she had completed two substance abuse evaluations at her inpatient treatment facilities and was attending medication management appointments once a month. When asked why she had not signed release forms for her medical and employment history, she testified that she forgot to do so.

Crystal explained that while at the beginning of the case, her absences were due to being out of the country, her absence at the January 2024 review hearing was due to her enrollment at a residential treatment facility. Crystal admitted that she could have attended the hearing remotely but testified that she was not notified of the court date. She also admitted that she could have contacted Leighton or her attorney for information regarding upcoming court dates, but explained that at the time, her priority was treatment for her drug use.

Crystal acknowledged that she had a history of domestic violence with prior romantic partners. She admitted that, in the past, she had used methamphetamine with these individuals. Crystal testified that she had taken steps to address this issue, including "treatment" and anger management classes. Due to the lack of release forms, Leighton was unable to confirm this information.

Ultimately, Leighton testified that there was not a meaningful bond between Alaina and Crystal. She based her opinion on Crystal's sporadic visitation and the foster family's descriptions of Crystal's informal visits. Leighton testified that it was in Alaina's best interests for Crystal's parental rights to be terminated.

On September 10, 2024, the court entered an order terminating Crystal's parental rights to Alaina. The juvenile court found that the State had proved statutory grounds for termination pursuant to § 43-292(2) and (4). With respect to § 43-292(2), the court found that the evidence established that Crystal was unfit due to substantially and continuously or repeatedly neglecting and refusing to give Alaina, and her three siblings, necessary parental care and protection. With respect to § 43-292(4), the court found that Crystal was unfit by reason of habitual use of methamphetamine, which conduct is seriously detrimental to the health, morals, or well-being of Alaina. While the court acknowledged that Crystal had recently completed an inpatient treatment

program, it stated that her actions were "too little, too late." The court also noted that Crystal did not provide any clear evidence that she would be able to maintain her sobriety.

The juvenile court also found that termination of Crystal's parental rights was in Alaina's best interests. The court explained that Crystal was not a fit parent because she refused or neglected to engage in visitation with Alaina for many months, was inconsistent in her participation in the virtual visits once they began, used methamphetamine throughout her pregnancy with Alaina, failed to demonstrate any long-term sobriety, and did not attend any of Alaina's medical appointments. The court also noted that throughout the years, Crystal was unable to rehabilitate herself sufficiently to have Alaina or her other children returned to her care. The court found that Crystal's recent attempts to rehabilitate herself were insufficient and occurred only after too much time had elapsed with nearly no contact with Alaina.

Crystal appeals.

## ASSIGNMENTS OF ERROR

Consolidated and restated, Crystal assigns that the juvenile court erred in finding that (1) the State proved by clear and convincing evidence that Alaina was a minor child within the meaning of § 43-292(2) and (4), and (2) terminating her parental rights was in Alaina's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Jordon B.*, 316 Neb. 974, 7 N.W.3d 894 (2024). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of facts over the other. *In re Interest of Jeovani H.*, 316 Neb. 723, 6 N.W.3d 539 (2024).

## ANALYSIS

*Statutory Grounds for Termination.*

Crystal assigns that the juvenile court erred when it found that statutory grounds existed to terminate her parental rights pursuant to § 43-292(2) and (4). For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that such termination is in the child's best interests. *In re Interest of Gabriel B.*, 31 Neb. App. 21, 976 N.W.2d 206 (2022). The State must prove these facts by clear and convincing evidence. *Id.*

Section 43-292(2) provides for termination of parental rights when "parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection." Past neglect, along with facts relating to current family circumstances—which go to best interests—are all properly considered in a parental rights termination case under § 43-292(2). *In re Interest of Gabriel B., supra*. One need not have physical possession of a child to demonstrate the existence of neglect contemplated by § 43-292(2). *In re Interest of Gabriel B., supra*. A parent neglects a child by failing to put himself or herself in a position where the child can be placed in the parent's care, in the same manner as a parent who improperly cares for a child in his or her care. *Id.*

Crystal argues that while she may have neglected or refused to give Alaina and her siblings necessary parental care and protection during the first 3 months of Alaina's life, she has since achieved sobriety and made substantial efforts to participate in the case. She asserts that she showed great improvement after seeking treatment for her drug use and that she was not given an opportunity to demonstrate her parenting skills.

While we acknowledge and commend Crystal on the positive steps she has taken to achieve and maintain her sobriety, the evidence nonetheless supports the juvenile court's conclusion that she neglected Alaina and Alaina's siblings within the meaning of § 43-292(2). Crystal has been involved with juvenile court proceedings since November 2018. In her prior cases, she failed to achieve reunification with her three older children. The same issues that plagued her prior cases, including drug use, domestic violence, poor communication, and sporadic participation, were present in this case both before and to some degree after her graduation from a residential treatment program.

Despite her recent accomplishments, Crystal has nonetheless failed to put herself in a position where Alaina could be placed in her care. Throughout the case, Crystal has failed to maintain consistent contact with the Department. The failure to sign the necessary release forms and keep the Department abreast of her various therapies and treatments created a disconnect between her reported improvement and the Department's ability to assess said improvement. At trial, Crystal did provide some evidence of her progress, including her certificate of graduation from St. Monica's and information as to subsequent treatment plans. However, because Crystal did not give the Department access to this information prior to trial, there was never any basis to modify her case goals or amend the permanency goal.

This is particularly significant given Crystal's long history of methamphetamine use. The original orders in this case provided for testing provided by the Department. Had the Department been able to consistently drug test Crystal, there could have been concrete evidence of her sobriety, and the case may have progressed differently. But Crystal's stagnant approach to engaging in Department-supervised services halted all case progress. She refused to submit to drug testing twice in this case, and by the time she was willing to be tested, the motion to terminate had already been filed. We note that even at this late stage, the court invited Crystal to produce test results at trial demonstrating that she could stay sober. While she testified at trial that she had remained sober, she provided no documentation that supported her testimony.

Crystal has also not yet shown an ability to secure stable housing or employment. A month before the termination hearing, she was terminated from a half-way house for failing to abide by the home's policies. Moreover, although Crystal testified that she had stable employment, Leighton was unable to confirm her job status.

Perhaps most glaringly, in the last few months of the case (which Crystal maintains was a period of great improvement), Crystal did not show a consistent, dedicated approach to visitation. After graduating from treatment in March 2024, she attended only 12 of 22 virtual visits. This amounted to only 6 hours of Department-sanctioned visitation. Crystal never achieved in-person visitation. The only evidence of her in-person interactions with Alaina were described as informal, brief, inattentive, and unstructured visits facilitated by the foster family. This sporadic involvement in Alaina's life prevented the Department from assessing Crystal's parenting skills and from observing any bond between her and Alaina.

Upon our de novo review, we conclude that there is clear and convincing evidence that Crystal substantially and continuously neglected Alaina and refused to give Alaina and her siblings the necessary parental care and protection as required by § 43-292(2). Any one of the bases for termination of parental rights codified by § 43-292 can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Noah C.*, 306 Neb. 359, 945 N.W.2d 143 (2020). As such, we need not determine whether termination of Crystal's parental rights was proper under § 43-292(4).

*Best Interests.*

Crystal assigns that the juvenile court erred in finding that termination of her parental rights was in Alaina's best interests. Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. See *In re Interest of Noah C., supra*. There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. *Id.* Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id.*

The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *In re Interest of Cameron L. & David L.*, 32 Neb. App. 578, 3 N.W.3d 376 (2024). And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id.* In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *Id.*

In her brief on appeal, Crystal argues that the evidence presented at the termination trial did not demonstrate that she was an unfit parent. Crystal contends that she was not given adequate time to prove her sobriety. Alternatively, Crystal argues that the evidence demonstrates that she completed a residential treatment program, and thus has demonstrated long-term sobriety. Crystal alleges that the Department failed to provide adequate verification of her sobriety and that the Department "simply wanted an adoption and never offered [Crystal] adequate visitation arrangements or a means to show her fitness." Brief for appellant at 13. We disagree.

The evidence established that Crystal was given adequate time to pursue and maintain her sobriety. Crystal has been involved in the juvenile court and has been in contact with the Department since November 2018. During her prior cases, the Department offered her services to help her achieve sobriety. For a period of approximately 5 years, Crystal chose not to take advantage of these services or take positive steps on her own to address the issues that resulted in the removal of her children. This case moved quickly toward attaining the goal of adoption due in large part to Crystal's initial decision to forgo any contact with Alaina and her continued refusal to engage in services. At the beginning of the case, Crystal resisted all reunification efforts and explicitly stated that she wanted the Department to pursue an adoption for Alaina. After receiving this information, and after considering Crystal's prior case history, the Department recommended a permanency goal of adoption only.

Despite this recommendation, the Department still attempted to pursue rehabilitation efforts with Crystal. These efforts were largely stifled when Crystal traveled to Mexico with no certain return date. While on this trip, she could not engage in any services or engage in any visitation with Alaina. Upon Crystal's return, Leighton contacted Crystal to begin services, but Crystal once again refused to participate. Shortly thereafter, Crystal reported being assaulted by a former romantic partner and indicated that she was experiencing serious mental health issues, leading to her admission into a psychiatric treatment center. In sum, Crystal's conduct for over 4 years prior to the inception of this case, and for several months after this case was filed, demonstrated that Crystal was either unwilling or unable to address her drug use and pursue sobriety.

We also cannot accept Crystal's assertion that she has demonstrated long-term sobriety by completing a residential treatment program. While this accomplishment cannot be discounted, it constituted only the first of many steps that were necessary to demonstrate that Crystal could maintain her sobriety outside of a treatment facility. Further evidence, such as continuous drug testing with negative results, adherence to treatment plans, and regular attendance at therapy, was needed to show that Crystal could live a sober, drug-free life.

We acknowledge that the juvenile court denied Crystal's request for drug testing in April 2024. However, we note that this request was made 8 months into the case and only after the motion to terminate Crystal's parental rights was filed. As an alternative, the court invited Crystal to submit evidence of her drug testing through other programs. No such evidence was submitted at the termination hearing.

Crystal's allegation that the Department failed to provide adequate verification of her sobriety is similarly without merit. We struggle to see how the Department can be held responsible for said failure when Crystal refused to submit to drug testing for months and failed to sign the necessary release forms that would allow the Department to verify her progress. Despite Crystal's failure to cooperate, Leighton admitted that Crystal appeared to have made some positive changes in her life. Any limitation on Leighton's testimony as to Crystal's progress was due to her inability to obtain the necessary information from treatment providers.

Finally, Crystal's assertion that the Department only pursued an adoption and never offered Crystal adequate visitation arrangements is refuted by the record. When the case opened, the Department immediately attempted to implement visitation, but Crystal declined this service until March 2024. Crystal's attendance at visitation was incredibly poor, as she attended only 6 supervised hours throughout the course of the case. Leighton testified that had Crystal been more engaged in these visits, she could have progressed to in-person sessions. But due to her sporadic involvement, Crystal never advanced beyond virtual visitation. The failure to secure additional or more substantial visitation rests solely on Crystal's shoulders.

We conclude that Crystal has failed to demonstrate an ability to be a fit parent to Alaina. As the juvenile court found, Crystal's participation in this case began far later than needed, particularly given her history of noncompliance. Crystal has failed to show continued improvement in her parenting skills or a beneficial relationship between herself and Alaina. The lack of supervised, in-person visitation prevented Leighton from assessing whether any meaningful bond existed between mother and child. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental

rights. *In re Interest of Cameron L. & David L.*, 32 Neb. App. 578, 3 N.W.3d 376 (2024). Alaina deserves stability in her life and should not be suspended in foster care to await Crystal's uncertain parental maturity. Accordingly, we affirm the decision of the juvenile court which found that termination of Crystal's parental rights was in Alaina's best interests.

CONCLUSION

Upon our de novo review of the record, we find that there was clear and convincing evidence to support the termination of Crystal's parental rights to Alaina under § 43-292(2) and that termination of her parental rights was in Alaina's best interests. Accordingly, the order of the juvenile court is affirmed.

AFFIRMED.